VOORHIES, MILLER & CO. *IN RE* HURST, PURNELL & CO. v. LATIMER.

1. PRACTICE—RULE.—A rule against the sheriff, with leave that others whose rights are to be affected shall be fully heard, is a recognized mode of determining the question of the priority of judgment liens.

2. PROCEEDS OF SALE—JUDGMENTS—RULE—FEDERAL COURTS.—A sheriff selling lands, under a State execution in his office, must apply the proceeds to a senior judgment obtained in the federal court, which is at the time of sale a lien upon the land, if the sheriff has notice thereof before the proceeds of sale are paid out; and such judgment creditor in the federal court may have a rule against the sheriff out of the State court requiring him to so apply it.

3. MORTGAGE—JUDGMENT.—A mortgage of a homestead to secure a judgment does not divest the general judgment lien.

4. IBID.—IBID.—If mortgage premises are sold under execution and bought by mortgagee, and if the mortgage is thereby legally satisfied, the antecedent lien of the judgment would still take the proceeds of sale.

Before EARLE, J., Yorkville, July 10, 1895.   Affirmed.

Application by Voorhies, Miller & Co. *in re* Hurst, Pur-

nell & Co. against W. C. Latimer, for rule against Edward
A. Crawford, sheriff of York County, requiring him to apply
proceeds of sale of lands of defendant under execution out
of State court to judgment of petitioner obtained in federal
court.   The following is the decree of Judge Earle:

This is an application for a rule against E. A. Crawford,
the sheriff of York County, to compel him to make title to
certain real estate of the defendant, offered for sale under a
levy of the execution issued upon the judgment herein, and
bid off by Andrew E. Moore, as the attorney for Voorhies,
Miller & Co., they claiming to have a judgment of the
United States Court against the defendant older than any
of the State judgments against him, and greater in amount
than the bid, and having tendered him the amount of the
costs of sale and a receipt for the balance of the bid.

The matter first came up for a hearing before his honor,
Judge Witherspoon, upon the sheriff's return, which urged,
amongst other things, that the questions at issue were too
grave to be determined in a proceeding of· this kind; and,
further, that in no event should the hearing proceed until
the State execution creditors, who were also claiming the.
proceeds of sale, should first be made parties.

Without deciding anything upon the first point sub-
mitted, Judge Witherspoon passed an order requiring Voor-
hies, Miller & Co. to enter a formal appearance, and that
the said creditors be brought in, and, in the meantime,
restraining the sheriff from reselling under his advertise-
ment as for non-compliance, upon the bidder at the first sale
acknowledging his continued liability for his bid.   The
creditors and Voorhies, Miller & Co. were made parties
accordingly, the former serving a return and the latter a
general traverse; and now the matter comes before me
upon all these pleadings and the evidence offered.

In view of the fact that all necessary parties are before
me, I shall not put Voorhies, Miller & Co. to a formal bill
of complaint, but proceed to hear and determine the issues
involved as presented in this proceeding.

After hearing argument of counsel, I am of opinion that it is the duty of the sheriff to apply the proceeds of sale to the oldest judgment which bound the property when he took it in execution, even though that judgment be a judgment of the United States Circuit Court, and especially when it is brought to his attention, as was done in this case. There can be no doubt that the moment the sheriff seized the property, it was no longer subject to process for the satisfaction of said United States judgment, and if it had required a levy to create a lien, of course no lien could ever thereafter have been acquired by said judgment creditor. But the act of congress makes this judgment a lien upon the defendant's real estate all over the State from the date of its entry, March 5th, 1894, and for the very reason that the sale by the sheriff divested that lien, it becomes the duty of the sheriff to apply the proceeds of sale to that judgment, it being the oldest judgment, as alleged.

On the 28th November, 1894, the defendant, W. C. Latimer, made a bond and mortgage to Voorhies, Miller & Co., to further secure this judgment, in which mortgage is embraced the property levied on by the sheriff; and it is urged that this was a higher security, and so satisfied the judgment as such.   Whilst the lien of the mortgage is specific, yet in this case it is inferior to the judgment lien of the mortgagee, for the reason that some of the State judgments were entered between the judgment and the mortgage.   So I hold that the judgment was still outstanding at the time of the sheriff's sale.

It is also urged, that because Voorhies, Miller & Co. became the purchasers, their mortgage was thereby satisfied, and hence they cannot claim the proceeds of sale on that account.   But as some of the State judgments are junior and others senior to this mortgage, I hold that the mortgage has not been satisfied, as claimed, although it be true the sale divested the lien of the mortgage; for whilst no actual levy was made of any of the executions except that of Hurst, Purnell & Co., junior to this mortgage, the sale

must be referred to all the executions in the sheriff's office at the time, and executions had been issued and were in his hands on all the State judgments referred to.

It is further urged, that Voorhies, Miller & Co. should not be permitted to take the proceeds of sale without first exhausting certain collaterals which they admit they hold. But as it has not been made to appear that they could be required to do so without injury, or delay, or detriment, I overrule this objection also.

Voorhies, Miller & Co. state in their traverse that more than the amount of the bid was owing on their judgment at the time of the sale. This is denied by the creditors, and so a reference upon this point becomes necessary. Let the clerk inquire, and report to me the amount due upon said judgment, after an examination of Andrew E. Moore, attorney of record for said Voorhies, Miller & Co., as to such payments as may have been made on their judgment, and after hearing such other testimony as may be offered.

It is ordered, that the sheriff do accept the receipt and payment tendered by Voorhies, Miller & Co., and make titles to them as in the case of a bid duly complied with, provided that their receipt shall not be good for a greater amount than shall be found to be due on their judgment under the reference ordered.

It is understood and agreed, and ordered accordingly, that if an appeal be taken by the creditors, or by the sheriff, or both, the same shall work a *supersedeas* here; and during the time allowed in which to appeal, the sheriff is hereby excused from obeying this order. Subject to the provisions hereinbefore, let the rule be made absolute.

Jurisdiction of this case is hereby expressly retained, for the purpose of making all such further orders as may be necessary to carry out the judgment here pronounced, upon the coming in of the clerk's report.

· Edw. A. Crawford, S. Y. C., and all of the creditors holding judgments of the State court, appealed from this decree on the following exceptions:

1. Error in not putting Voorhies, Miller & Co. to their formal bill of complaint—the various equities and rights of the parties being such as could not be properly passed upon in a proceeding by rule.

2. Error in holding that it was "the duty of the sheriff to apply the proceeds of sale to the oldest judgment which bound the property when he took it in execution, even though that judgment be a judgment of the United States Circuit Court;" and error in not holding that the sheriff could not apply any part of the proceeds of sale to a judgment of the United States Circuit Court.

3. Error in holding that the lien of the mortgage taken by Voorhies, Miller & Co. from Wm. C. Latimer was "inferior to the judgment lien of the mortgagee, for the reason that some of the State judgments were entered between the judgment and the mortgage;" and error in not holding that when Voorhies, Miller & Co. took their mortgage, the lien of their judgment was lost in the specific lien of the mortgage.

4. Error in holding that the judgment of Voorhies, Miller & Co., as a lien upon the house and lot of Wm. C. Latimer, was still outstanding at the time of the sheriff's sale; and error in not holding that the judgment lien had been swallowed up in the specific lien of the mortgage.

5. Error in holding that the mortgage and the mortgage demand of Voorhies, Miller & Co. had not been satisfied by their becoming purchasers of the mortgaged premises at the sale by the sheriff; and error in not holding to the contrary, and that Voorhies, Miller & Co. were bound to pay their bid to the sheriff.

6. Error in holding that the sale by the sheriff must be referred to all the State judgments—a principle that is only to be invoked in behalf of a purchaser for the sole purpose of giving to the purchaser a clear title to the premises purchased.

7. Error in not holding that, in any event, Voorhies, Miller & Co. should not be permitted to take the proceeds

of sale without first exhausting certain collaterals which they admit they hold; and, in this connection, error in not putting them to their formal bill of complaint, where the court could require an accounting, and a surrender of the collaterals for the benefit of other creditors of Wm. C. Latimer.

8. Error in ordering the sheriff to accept the receipt and payment tendered to him by Voorhies, Miller & Co.; and error in making the rule absolute, and in not ordering the same to be discharged.

A reference was held, and the clerk reported that on the day of sale there was due upon the judgment of Voorhies, Miller & Co. the sum of $2,259.84, and the report was confirmed. Appellants gave due notice of their intention to appeal from the order confirming the report, and from the decree so made final, and state this error in confirming the report, and thereby perpetuating the errors in the decree, pointed out by the exceptions duly taken thereto.

*Messrs. Wilson & Wilson, Finley & Brice, Thomas F. McDow*, and *Hart & Hart*, for appellants.

*Messrs. Andrew E. Moore* and *Bomar & Simpson*, contra.

March 9, 1896. The opinion of the court was delivered by

MR. JUSTICE POPE. Edward A. Crawford, as sheriff of York County, under an execution in his office, issued out of the Court of Common Pleas for York County, in this State, in the action of Hurst, Purnell & Co., as plaintiffs, against William C. Latimer, as defendant, after levy, and a compliance with all the requirements of the laws of this State governing the advertisement of property for sale under execution, on the first Monday of May, in the year 1894, sold the storehouse and lot and family dwelling house of the defendant in execution, William C. Latimer, at the price of $1,300, unto the firm of Voorhies, Miller & Co., as the highest and last bidders at said sale. Immediately after

the sale, said firm of Voorhies, Miller & Co., in payment of
said property, tendered the sum of $26.51 (the exact sum of
all the sheriff's costs and fees for said sale), and their receipt
for the sum of $1,273.50—the balance—as part payment of
the judgment senior in lien to all judgments against the
property of the said William C. Latimer, which they had
recovered against said Latimer in the United States Circuit
Court for the district of South Carolina, at Charleston, on
the 5th day of March, 1894, and then and there exhibited
to said sheriff the execution duly issued out of said United
States Circuit Court for over the sum of $2,000.   The said
Edward A. Crawford, as said sheriff, declined to accept the
offer of settlement of the bid of Voorhies, Miller & Co., and
refused to make them a deed of conveyance of the property
unless they paid their entire bid in cash, alleging that there
were executions in his own office, issued from the courts of
the State of South Carolina, to which the whole of the pur-
chase money should be applied, and that he could not, as
sheriff, recognize the United States Court execution.   The
said sheriff then readvertised the property for sale.   Where-
upon Voorhies, Miller & Co. applied to Judge Benet for a rule
against said Edward A. Crawford, as sheriff, requiring him
to show cause before said judge, at York Court House, on
the 16th day of May, 1894, why he should not be required
to make title to Voorhies, Miller & Co.; but afterwards, as
the official duties of his honor, Judge Benet, required him
to leave York County prior to the day fixed for the return of
the rule, by the consent of all the parties, the rule was made
returnable before his honor, Judge I. D. Witherspoon, the
resident judge of the sixth circuit.   For a return to the
rule, the sheriff alleged in substance, that he had levied
upon and sold the storehouse and lot in Yorkville as the
property of William C. Latimer, the execution debtor; that
no levy was endorsed upon the many other executions,
twenty-five in number, in his office, against the said Latimer;
that a large amount is due upon such executions, and the
plaintiffs therein claim the money arising from the sale

made by him as aforesaid, which Voorhies, Miller & Co. are now seeking to obtain on their judgment and execution in their action in the United States Circuit Court for the district of South Carolina; that he is not advised as to the validity of that latter named judgment, but he is advised that he cannot apply the proceeds of the sale made by him to their judgment; that he is advised that no order made in the present proceeding, directing him to pay such judgment, can afford him, as sheriff, that protection to which he is entitled at the hands of the court, nor any protection whatever, unless all of the judgment creditors of W. C. Latimer, who caused their executions to be filed in his office as sheriff, shall be made parties to these proceedings; and he names each one, who has filed his execution in the office of the sheriff of York County. Further, that he is advised by the judgment creditors of W. C. Latimer, who have filed their executions in his office as said sheriff, that Voorhies, Miller & Co. hold a mortgage on the house and lot so sold by him, and that such mortgage was of older date than some of the judgments obtained in the State courts, and the State judgment creditors claim that the judgment of Voorhies, Miller & Co. was paid, by operation of law, when they became the purchasers at the sale made by him as sheriff. Further, that he is advised by the judgment creditors, who obtained their judgments in the State courts, that Voorhies, Miller & Co. hold collaterals received from W. C. Latimer to secure their judgment; that if Voorhies, Miller & Co. have any right to be paid their judgment out of the proceeds of sale as made by the sheriff, it is only an equitable right, and is not such as can be taken notice of in such a proceeding as the present, and can only be asserted, if at all, after they have first exhausted the securities they hold as collaterals as aforesaid. Further, that the bid of Voorhies, Miller & Co. for the storehouse and lot of W. C. Latimer, if paid, is utterly insufficient to pay the executions, as aforesaid, now in his hands as sheriff. Wherefore he prays (1), that the application of the rule shall be dis-

missed; (2), that in case the court does not dismiss the rule, that all of the execution creditors of W. C. Latimer be made parties to this proceeding, to the end that the judgment of this court may be and afford a full protection to the sheriff of York County, and that if any of the proceeds of the sale made by him, as sheriff, be ordered paid to the execution of Voorhies, Miller & Co., now in the hands of the United States marshal, that such marshal shall be made a party to this proceeding. At the hearing of the rule, before Judge Witherspoon, he ordered that Voorhies, Miller & Co. enter of record their appearance in this proceeding, and that all the holders of judgments against W. C. Latimer, whereon executions had been issued to the sheriff of York County, be made parties, with leave to answer. All these things were done. Thereafter all the issues came on to be heard before Judge Earle, at York C. H., and he filed his decree on the 10th July, 1895, which must be reported. The effect of this decree was that the sheriff should execute title to Voorhies, Miller & Co. for the storehouse and lot, upon the payment by them of the sheriff's fees for sale, and upon their receipting to said sheriff for the balance of proceeds of such sale—but he ordered a reference to the clerk to ascertain the true amount due on the judgment of Voorhies, Miller & Co. At this reference it was found that such amount was $2,259.84, and upon the report of the clerk to that effect, Judge Earle confirmed the report.

All the parties to the proceedings, except Voorhies, Miller & Co., appealed from the decree and the order fixing the amount due. These exceptions will be reported.

We will now address ourselves to their consideration. The first exception sharply draws in question the right of Voorhies, Miller & Co. to have the court pass upon the matters here involved, under a rule against the sheriff, rather than allowing and requiring such firm to present the same in an action on the equity side of the court. We may remark that both Judges Witherspoon and

REP.]                    November Term, 1895.

Earle manifested the liveliest care of the rights of *all* the parties who hold judgments against W. C. Latimer, the judgment debtor, and who claimed a right to participate in the division of this fund arising from a sale by the sheriff of said judgment debtor's property; all such parties were brought before the court, with leave to be fully heard. No higher or better opportunity to vindicate their respective rights could have been afforded these parties, even under a bill of complaint. Each of these creditors had obtained, in a separate suit therefor, a judicial ascertainment of the indebtedness of W. C. Latimer to them. There were no facts touching such judgments that it was in the power of any one holder of a judgment against W. C. Latimer to make in relation to judgments held by others than himself. It could only be, therefore, that questions of law relating to the priority of lien, &c., of such judgments, could arise. A rule against the sheriff, with leave that others whose rights are to be affected thereby shall be fully heard, is a recognized mode of determining such questions. As was well said in the case of *Charles* v. *Charles*, 13 S. C., 388, in discussing a rule against the sheriff: "Very often the object of the rule is not to punish the sheriff, but to enforce a claim of right. * * * It is not his duty to decide conflicting rights, and, until the question is decided, he is not culpable or in default, and the court will see to it that he is not punished. He is not required to run the risk of punishment, but to do, as the sheriff in this case did, give notice to the person claiming homestead, and refer the question of his duty to the court, which may decide it, or, if necessary, order an issue. *Taylor* v. *Easterling*, 1 Rich., 316; *Canady* v. *Odum & Westhery*, 2 Rich., 527; *Brown* v. *Truss*, 2 Rich., 531; *Thomas* v. *Adkins*, Dudly, 223. What is here said is not intended to conflict with any of the decided cases in our books, which hold that the court will not, in a summary way, upon mere rule, decide any matter in which there is conflicting testimony, but leave the party to his action. That is a safe rule of practice,

and necessary for the proper administration of the law, *but it has no application when the facts are simple or admitted, or it is a question of law—especially one in reference to the duty of the officer who is ruled in regard to the enforcement of the process of the court*" (italics ours). This exception is overruled.

The next exception, the second, raises a very important question. It is this: Where a creditor obtains a judgment in the United States Circuit Court for the district of South Carolina, in 1894, and execution is issued thereon, and placed in the office of the marshal for said district, which is confessedly the oldest lien upon the lands of the judgment debtor, but, subsequently to such judgment, other creditors obtain judgments in the State courts against the judgment debtor, and, under these later judgments, the sheriff of the county, in the State where the lands of the judgment debtor are situated, levies upon and sells the said lands under the executions lodged in his office, can the holder of such oldest lien obtain the aid of a State court, on a rule against the sheriff, to force the sheriff to apply the proceeds of sale to the judgment of the United States Circuit Court? Now, it is confessedly true that that court, federal or State, which first seizes the property is entitled to administer it without any interference from the courts of the other jurisdiction. Thus, in the instance before this court, if the United States marshal had first taken possession of this land under the judgment of the United States Circuit Court, the sheriff of York County would have been powerless to seize said lands and wrest them from the United States marshal. So, on the other hand, when the sheriff of York County seized said lands under the judgment of the State Circuit Court, it was not in the power of the United States marshal to interfere with his possession. It is also conceded that when the sheriff of York County having first acquired the possession of said lands under execution against the property of W. C. Latimer and actually sold them, such sale divested the lien of all the judgments

in the State courts and in the United States courts for South Carolina upon said lands. *Trumbo* v. *Cummings*, 20 S. C., 336; *Pulliam* v. *Osborn*, 17 Howard (U. S.), 471. Under the authority of *Hogan* v. *Lucas*, 10 Peters, 404, we would be inclined to *hold*, that it could not be required of the sheriff to apply moneys in his hands from sales under executions in his office to any other than such executions as are addressed to the sheriff, and not to executions addressed to the United States marshal, for the court, in the case just cited, used this language: "Under the State jurisdiction, a sheriff having execution in his hands may levy on the same goods; and where there is no priority on the sale of the goods, the proceeds must be applied in proportion to the sums named in the execution. * * * But the same rule does not govern where the executions, as in the present case, issue from different jurisdictions. The marshal may apply moneys collected under several executions the same as the sheriff; *but this cannot be done as between the marshal and the sheriff.*" However, our State has provided by statute, section 744 of the Civil Statute Laws of South Carolina: "The sheriff shall pay over the proceeds of any real estate sold by him to any judgment having prior lien thereon." The identical language above quoted was used in the General Statutes of the State, adopted in 1882, as section 685 thereof, and likewise in the Revised Statues of 1872, at section 44. In the statute as originally adopted in 1839 (11 Stat. at Large, p. 38, section 60), it was thus provided: "The sheriff shall pay over the proceeds of any real estate sold by him to any judgment having a prior lien thereon, which may have been entered in the clerk's office of any district, whether an execution on such judgment may have been lodged in his office or not—provided, notice of such judgment be given to the sheriff before such proceeds shall have been otherwise paid." Under the very general terms in which our present statute now reads, Voorhies, Miller & Co. made their application, and it was made before any money was paid out by the sheriff. It must be

obvious that, if this application is not granted, a loss will be visited upon that firm. Confessedly, they had the *first and preferred lien* upon the lands of the judgment debtor, W. C. Latimer. In order to prevent any collision as to jurisdiction between the federal and State courts, and in exact conformity with the practice of the courts of the mother country, it has always been held that the court whose officer first takes possession of the property will prevent any interference therewith by the other court. Both these judicial systems are *our own*—one federal, the other State. What reason can be advanced to support a loss resulting from an honest choice of a plaintiff for either jurisdiction? It is due the cause of justice and right that a party plaintiff, in either jurisdiction,. who has reduced his claim against a debtor to a solemn judgment, and who has thereby the oldest and preferred lien upon the property of the debtor, should not have his claim sacrificed at the demand of the holders of confessedly junior liens. The Circuit Judge took this view. We think he was right, and hence overrule this exception.

As to the third exception, we are unable to sustain it. When Voorhies, Miller & Co. obtained their judgment, they had a lien upon the whole property of Wm. C. Latimer, except his homestead in the tract of land. The mortgage by Latimer to them of this house and lot, whereon was his residence, added this homestead to their claims against Latimer. It injured no creditor of Latimer. It was not taken in substitution for the judgment. But if Voorhies, Miller & Co. should be held to the mortgage, it would work a manifest injustice, for some of the creditors obtained judgments against Latimer before the mortgage was executed; and, therefore, if Voorhies, Miller & Co. were compelled to forego or surrender their first lien by judgment, then junior judgment creditors would be benefited at their expense.

As to the fourth exception, we are unable to agree that it points out any error in the circuit decree. If the execu-

tion of the mortgage did not invalidate the lien of the
Voorhies, Miller & Co. judgment—of course, the latter was
the first lien on the storehouse and lot—and we have just
held that the execution of the mortgage did not have that
effect.

As to the fifth exception, it is overruled; because, if we
were to hold that the sale of the mortgaged land, and the
purchase thereof by the mortgagee, did legally
satisfy the mortgage, the antecedent lien of the judg-
ment would still take the proceeds of sale. This
antecedent lien by judgment is the issue here.

As to the sixth exception, it is overruled, for the judge,
in announcing his conclusion, but followed the many de-
cisions of this court on that subject. The recent case of
*Baum* v. *Trantham*, 23 S. E. Reporter, 59, 60, only set up
an exception to that rule.

As to the seventh exception, it is overruled, because
there is nothing in the "Case" which goes to show that
anything tangible on that subject was presented to the Cir-
cuit Judge, and we are unwilling, in these busy days, to
endeavor to unravel a conjecture.

As to the eighth exception, it is overruled, because fully
covered by our previous holdings herein in discussing the
other exceptions.

As to the ninth exception, relating as it does to the order
confirming the report of the clerk, nothing of substantial
nature is suggested by the appellants in connection there-
with. We presume it was excepted to, so that, if this
court sustained any of the other grounds of appeal, the
appellants would not be prejudiced by this order of confirm-
ation.

It is the judgment of this court, that the judgment of
the Circuit Court be affirmed.